THE CADLE CO.,                    :
    Plaintiff,                  :
                                :
v.                               :        Case No. 3:04cv1225 (JBA)
                                :
CRISTINA OGALIN, ET AL.,          :
    Defendants.                 :

## RULING ON DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW [DOC. # 195] AND MOTION FOR NEW TRIAL [DOC. # 197]

This case, arising out of Chapter 7 bankruptcy proceedings, alleged that defendants Cristina Ogalin, Verna Ogalin, and Drywall Construction Corporation ("DCC") engaged in and/or were the recipients of fraudulent transfers in violation of the Connecticut Uniform Fraudulent Transfers Act ("CUFTA") and the U.S. Bankruptcy Code to the detriment of the creditors of their relative, debtor Frank Ogalin.  Following a jury trial and verdict in plaintiff Cadle Company's favor, defendants filed the instant Renewed Motion for Judgment as a Matter of Law [Doc. # 195] pursuant to Fed. R. Civ. P. 50[1] and a Motion for New Trial [Doc. # 107].  For the reasons that follow, the Court DENIES both motions.

## I.    Factual and Procedural Background

Chapter 7 bankruptcy proceedings had been commenced on June

---

[1] Defendants previously moved for judgment as a matter of law before the case was submitted to the jury, which motion the Court denied in light of Williams v. County of Westchester, 171 F.3d 98 (2d Cir. 1999).

30, 2000 by debtor Frank Ogalin, husband of defendant Verna Ogalin, father of defendant Cristina Ogalin, and former officer of defendant DCC.  In an adversary proceeding before the Honorable Albert S. Dabrowski, United States Bankruptcy Judge in the District of Connecticut in January 2004, plaintiff Cadle, the successor-in-interest of the Bankruptcy Trustee, successfully challenged Frank Ogalin's claim of entitlement to discharge of his debts.  See In re: Frank F. Ogalin, 303 B.R. 552 (Bankr. D. Conn. 2004).  On July 26, 2004, this Court granted Cadle's motion for withdrawal of reference pursuant to 28 U.S.C. § 157(d). (Order [Doc. # 7].)

Frank Ogalin's financial woes began with his operation of Walls & Ceilings, Inc. ("W&C"), a drywall construction business incorporated by his brother Jeffrey Ogalin and him in 1989.  In 1991, the Ogalin brothers terminated W&C and formed defendant DCC, which was formally incorporated by their mother Margaret Ogalin and with original shareholders, defendants Verna Ogalin and Marie Ogalin, Jeffrey's wife, who each held 50% of the DCC stock.  Jeffrey was named President and Treasurer and Frank was named Vice President and Secretary.  Jeffrey Ogalin left DCC in 1994, at which time Verna took over as President and was transferred Marie's stock.  Immediately thereafter, Verna, now owner of 100% of the shares, transferred the stock to then 15-

2

year-old Cristina, 25% in her individual capacity and 75% as trustee for her three younger siblings. Cristina began working part-time for DCC in 1995 and then upon her graduation from high school assumed full-time employment in 1997, and Verna worked part-time in a bookkeeping capacity. When Frank Ogalin resigned from the company, Cristina took over as Vice-President and Secretary of DCC, eventually earning upwards of $149,770.[2]

The stock transfers, as well as the allegedly excessive salaries paid to Verna and Cristina Ogalin and several real properties acquired by Cristina with her salary, were the focus of plaintiff's lawsuit to recover fraudulent transfers. The eight-day jury trial, held from January 17 through 29, 2007, was only on Counts Two, Four, Five, and Seven of the Amended Complaint [Doc. # 62] and against defendants Verna and Cristina Ogalin only. Plaintiff had withdrawn Counts Three and Six, and the equitable claim in Count One and all claims against nominal defendant DCC were reserved for subsequent bench proceedings. The jury returned a verdict in the plaintiff's favor [Doc. # 182], in the amount of $774,649.00 against defendants Verna and

---

[2] W-2 forms in evidence indicated that Cristina Ogalin's annual salary during the relevant years was: $60,000 in 1997; $149,770 in 1998; $140,450 in 1999; $68,250 in 2000; $76,400 in 2001; $85,200 in 2002; $66,351 in 2003; and $59,800 in 2004. W-2 forms for Verna Ogalin indicated that her annual salary during the relevant years was: $45,000 in 1996; $26,000 in 1997; $26,000 in 1998; $34,208 in 1999; $41,298 in 2000; $41,200 in 2001; $31,200 in 2002; $37,000 in 2003; and $41,600 in 2004.

Cristina Ogalin.  Defendants' motions followed.

## II.  Standards

Under Fed. R. Civ. P. 50, the District Court may only grant judgment as a matter of law "where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or . . . [there is] such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him."  Cross v. N.Y. City Transit Auth., 417 F.3d 241, 248 (2d Cir. 2005) (internal quotation and citation omitted).  "In other words, a Rule 50 motion must be denied unless the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached."  Id.

A new trial should only be granted under Fed. R. Civ. P. 59 if the trial court is convinced "that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."  Munafo v. Metropolitan Transp. Auth., 381 F.3d 99, 105 (2d Cir. 2004).

## III. Discussion

### A.   Motion for Judgment as a Matter of Law

Of defendants' numerous arguments in support of their Rule 50 Motion, their central contention is that no evidence was offered at trial that Frank Ogalin ever owned the shares of stock or had control over the allegedly excessive salaries paid to defendants, which defendants maintain is a requirement for recovery of the fraudulently transferred assets of a debtor under CUFTA and the Bankruptcy Code.  Plaintiff stresses that defendants' line of argument misapprehends the theory of its case: that Frank Ogalin was the equitable owner of the DCC stock, that he and defendants fraudulently transferred stock and salaries as part of a scheme of indirect transfers intended to divert assets from Frank Ogalin's creditors, and that thus the transfers of stock and company money to defendants were fraudulent diversions of property owed to Frank's creditors.

### 1.   Debtor's ownership of the transferred assets

At trial, evidence was presented that Frank and Jeffrey Ogalin pursued unsuccessfully the drywall construction business of W&C, and that Frank Ogalin bore substantial tax liability for failing to withhold employee income taxes and federal insurance contributions from employee compensation, as required by 26 U.S.C. §§ 3101, 3102(b), 3402.  The evidence showed that when W&C

5

was dissolved, Frank and Jeffrey Ogalin, who had substantial customer and industry contacts and relationships, became the sole officers of DCC, whose sole shareholders, Verna and Marie Ogalin, had little or no experience in the industry. From these facts, the jury could have reasonably concluded that Frank Ogalin, while not the record-incorporator of DCC, although an officer from DCC's formation in 1991 until 1994, was in fact controlling the enterprise along with Jeffrey, as they alone among their family members had the experience, connections, and business reputation necessary to run such a business, which they had acquired from working with their father.

"The status of record title to [a] property is certainly not determinative of equitable ownership." In re: Vecchione, 407 F. Supp. 609, 616-17 (E.D.N.Y. 1976); In re: Gugliada, 20 B.R. 524, 533 (Bankr. S.D.N.Y. 1982). Instead, a debtor may be found "to enjoy at least an equitable interest in a company that for all practical purposes is a family enterprise orchestrated by the debtor," where he, inter alia, oversees the close corporation's daily affairs and participates in decision-making, and where family members are involved in the business. Id. From the evidence of how DCC's business was handled in this family setting, the jury could have found that Frank Ogalin held an equitable interest in DCC and that the initial issuance of 50% of

DCC stock to Frank's wife, defendant Verna Ogalin, in 1991, as well as the subsequent transfers of stock and the payments of excess salary were all fraudulent conveyances by him of his interest in violation of Conn. Gen. Stat. §§ 52-552 and 52-552e(a)(1).

Defendants primarily rely on In re: Bob Nicholas Enterprises, Inc., No. 03-39036-H5-7, 2007 Bankr. Lexis 120 (Bankr. S.D. Tex. Jan. 10, 2007), to argue that the fraudulently conveyed asset must be property of the debtor. In that case, the bankruptcy court held that the bankruptcy trustee failed to meet its burden of proving that the debtor-corporation's transfers of six purchase orders and good will to alleged successor entities were fraudulent because there was no evidence that the debtor-corporation held "more than a unilateral expectation" with respect to the purchase orders or that it actually had good will. See id. at *16-23. An equitable ownership theory was not advanced in the case. Nor was equitable ownership at issue in the cases cited by defendants in support of their argument that the jury improperly conflated the identity of the corporate owner with the corporation itself.[3]

---

[3] In Litchfield Asset Management Corp. v. Howell, 799 A.2d 298 (Conn. App. Ct. 2002), while observing that "[a] corporation is a separate legal entity, separate and apart from its stockholders," the appellate court nonetheless affirmed the lower court's finding that because "the corporate entity [was] so controlled and dominated [by its stockholders or members] that justice

7

Defendants press the general premise that the stockholders and directors of a formal corporation are unlike the members of a limited liability company or partnership and cannot be held personally liable, but as explained in Gugliada, infra, even though a corporation is a separate and distinct legal entity, a debtor may nonetheless have an equitable interest in the corporation that is recoverable by a creditor in bankruptcy.

Defendants specifically attack the verdict concerning Marie Ogalin's transfer to Verna Ogalin in 1994 on the basis that the transfer could not have been fraudulently executed by the debtor because plaintiff "fail[ed] to attack as a fraudulent transfer [DCC]'s issuance of that stock to Marie Ogalin in the first instance" (Defs. Mot. for Judgment [Doc. # 196]). However, based on the testimony of Frank and Jeffrey Ogalin as to their formation of W&C, expertise in the drywall business, and circumstances surrounding their decision and steps to incorporate DCC, and the fact that the brothers entered into an

require[d] liability to be imposed," it was proper to reverse-pierce the corporate veil of the limited liability company. Id. at 309-10. In Karanian v. Maulucci, 440 A.2d 959 (Conn. 1981), an action for accounting, the Connecticut Supreme Court reversed the trial court's conclusion that the corporation was in fact a disguised partnership, clarifying that once the corporate form is adopted, officers and directors are "protect[ed] . . . against personal liability, . . . [and] cease to be partners." Litchfield's reverse piercing theory is distinct from equitable ownership, which entails equitable disregard of title ownership, as opposed to corporate form. Karanian is inapposite, as Frank Ogalin's personal liability for DCC is not at issue.

indemnification agreement (by which Frank relinquished all claims he may have had against Jeffrey and Marie Ogalin) on September 1, 1994, the same day that Marie signed over her stock to Verna, the jury could have reasonably concluded that Marie was a nominal shareholder directed to transfer her stock to Verna when Jeffrey left DCC.  Given the central roles played by Frank and Jeffrey, it was reasonable for the jury to conclude that upon Jeffrey's departure, and with all the stock now in Verna's name and the business operations unchanged, Frank had become the equitable owner of DCC.  Thus, that Frank Ogalin was not the record owner of DCC property was not fatal to plaintiff's verdict and does not justify granting defendants' Motion.

### 2. Transfers of salary

Defendants have numerous arguments about the salary transfers that the jury found constituted both intentional and constructive fraud under CUFTA and the Bankruptcy Code.  First, defendants contend that the salaries cannot be fraudulent transfers because defendants were bona fide employees of DCC and there was insufficient evidence that the salary amounts were excessive.  At trial, plaintiff did not assert that defendants did nothing as DCC employees and should therefore have received nothing from the company.  Instead, the issue for the jury was how much of the salary paid was unjustifiably excessive such that

it was reasonable to conclude that some portion was a fraudulent transfer of company money that would otherwise have been available to pay creditors.  The evidence for evaluating Cristina Ogalin's annual salary payments was the testimony of economist Arthur Kenison and plaintiff's Exhibit 104, a statistical table of national salary averages based on workers' age and education level; for Verna Ogalin, the jury had reference to Exhibit 105, a table of hourly wages for bookkeepers in Connecticut.  While Kenison did not purport to have specific knowledge of the particular tasks that Verna or Cristina Ogalin performed, he explained to the jury that the figures represented salary averages, which were subject to adjustment for exceptionally skilled employees or employees who performed beyond the scope of their expected duties.

Based on the statistics provided and Kenison's testimony, as well as the testimony of defendants with respect to their actual tasks at DCC, the jury had an adequate basis for deciding what was a reasonable range for defendants' earnings and how much of their yearly salaries were unjustifiable excess, and thus fraudulent transfers.  This jury determination is not undermined by the absence of evidence of defendants' actual income tax liability.  Defendants' annual W-2 forms were in evidence, and the jury was instructed on the Social Security and Medicaid

deductions for the relevant years and applicable earnings brackets.  As plaintiff argues, this tax information was what defendants provided to the government, and "[t]he defendants owed a duty to not 'under-withhold' from their W-2 earnings."

Second, defendants claim that if Verna and Cristina Ogalin's excess salaries are voidable fraudulent transfers of an asset belonging to plaintiff, then some portion of these sums represented Frank Ogalin's salary as a DCC employee.  Defendants point to "the lack of any evidence as to what portion of earnings 'attributable' to Frank Ogalin, . . . in light of Connecticut's wage exemption law, could be considered 'property of the debtor'" (Defs. Mem. at 12), since under CUFTA a debtor's property or assets excludes "property to the extent it is generally exempt under nonbankruptcy law," Conn. Gen. Stat. § 52-552b(2)(B). Under the statute providing for postjudgment procedures, "[i]f a judgment debtor fails to comply with an installment payment order, the judgment creditor may apply to the court for a wage execution," and "[t]he maximum part of the aggregate weekly earnings of an individual which may be subject under this section to levy or other withholding for payment of a judgment is . . . twenty-five per cent of his disposable earnings for that week." Conn. Gen. Stat. § 52-361a(a), (f).  "Disposable earnings" is defined as "that part of the earnings of an individual remaining

after the deduction from those earnings of amounts required to be withheld for payment of federal income and employment taxes, normal retirement contributions, union dues and initiation fees, group life insurance premiums, health insurance premiums, and federal tax levies," Conn. Gen. Stat. § 52-350a(4).

The question of whether payroll checks constituting alleged fraudulent transfers fall under this exemption provision and thus fail to meet the CUFTA definition of "asset" was addressed in slightly different circumstances in Cadle Co. v. Jones, No. 00cv316 (WWE), 2004 U.S. Dist. LEXIS 18300 (D. Conn. Aug. 20, 2004). In that case--where the debtor had deposited his weekly salary checks into the bank account of his wife, the defendant-- the bench trial decision held that "the provisions of Section 52-361a are limited to the circumstances of wage execution, and therefore 52-361a(f) does not render the money transferred to defendant Jones exempt." Id. at *17. The reasoning of Jones is applicable here, as the fraudulently transferred funds were paid as salary to persons other than the debtor. As the fraudulently transferred sums were not executed upon as wages, § 52-361a provided no basis for the jury to reduce its "excess" salary findings.

Third, also on the theory that the excess salary transfers represented salary Frank Ogalin should have earned, defendants

attack the jury verdict on Counts Five and Seven (Bankruptcy

Code) as to all transfers occurring after the filing of Frank

Ogalin's Chapter 7 bankruptcy petition on June 30, 2000, arguing

that the Bankruptcy Code authorizes avoidance of only pre-

petition transfers.[4]  Defendants cite In re Klutchko, 338 B.R.

554 (Bankr. S.D.N.Y. 2005), In re Carlson, 263 F.3d 748, 750 (7th

Cir. 2001), and In re Reeves, 65 F.3d 670, 673 (8th Cir. 1995),

as supporting their theory of the non-recoverability of post-

petition transfers of earnings.  However, Klutchko, in which the

bankruptcy court denied the debtor's discharge and found that the

trustee had proven certain intentional fraudulent transfers, does

not address the issue of post-petition earnings, except to cite

In re Swanson, 36 B.R. 99, 100 (B.A.P. 9th Cir. 1984), which

observes that "[u]nder § 541(a)(6) future earnings do not become

property of the estate."  Similarly, Carlson simply quotes §

---

[4] Defendants cite 11 U.S.C. § 541(a)(6), which defines the
bankruptcy estate as including "[p]roceeds, product, offspring,
rents, or profits of or from property of the estate, except such
as are earnings from services performed by an individual debtor
after the commencement of the case;" 11 U.S.C. § 544, which
provides that the trustee "may avoid any transfer of property of
the debtor or any obligation incurred by the debtor that is
voidable by-- . . . a creditor that extends credit to the debtor
at the time of the commencement of the case, and obtains, at such
time and with respect to such credit, an execution against the
debtor that is returned unsatisfied at such time, whether or not
such a creditor exists;" and 11 U.S.C. § 548, under which a
trustee "may avoid any transfer . . . of an interest of the
debtor in property, . . . that was made or incurred on or within
2 years before the date of the filing of the petition."

541(a)(6) in holding that the value of a contingent-fee lawyer's services "up to the date of his bankruptcy (though not after, by virtue of section 541(a)(6)) is property of his estate in bankruptcy," 263 F.3d at 750. However, unlike the lawyer-debtor's post-petition income in <u>Carlson</u>, Verna and Cristina Ogalin's post-petition salaries do not constitute "earnings from services performed by an <u>individual debtor</u> after the commencement of the case," 11 U.S.C. § 541(a)(6) (emphasis added). Their salaries instead represent assets diverted from the income of DCC, of which debtor Frank Ogalin was found to be the equitable owner. Neither does <u>In re: Reeves</u> support defendants' position: there, the Eighth Circuit affirmed the district court's imposition of a constructive trust on the defendant-company "owned" by the debtor's wife, finding that the company stock was properly part of the bankruptcy estate and that the § 541(a)(6) limitation was only applicable insofar as the defendant-company could "establish that it ha[d] acquired post-petition assets through transfers to [defendant-company] or uncompensated services by [the debtor] that would not have occurred had the estate owned its stock." 65 F.3d at 673.

Here, defendants offered no evidence of any post-petition uncompensated services by Frank Ogalin benefitting DCC. Thus, the jury's decision to award damages for post-petition salary

transfers did not violate § 541(a)(6).  Moreover, the Bankruptcy Code sections relied on by defendants must be read together with 11 U.S.C. § 549, which provides for avoidance of a post-petition transfer "that occurs after the commencement of the case; and . . . that is not authorized under this title or by the court."  The Court rejects defendants' argument that plaintiff's failure to specifically invoke this provision in its pleadings bars Cadle from voiding defendants' salaries for the latter half of 2000 through 2006.  See Northrup v. Hoffman of Simsbury, Inc., 134 F.3d 41, 46 (2d Cir. 1997) ("Under the liberal pleading principles established by Rule 8 of the Federal Rules of Civil Procedure, in ruling on a 12(b)(6) motion 'the failure in a complaint to cite a statute, or to cite the correct one, in no way affects the merits of a claim. Factual allegations alone are what matters.'").

Defendants argue in the alternative that even if the excess salary amounts represent something other than the debtor's earnings, they should be construed as "distributions to shareholders," which can be authorized by a board of directors under certain circumstances, see Conn. Gen. Stat. § 33-687. Defendants point to no evidence at trial from which the jury should have concluded that the monies received were intended for this purpose.

### 3.    Statute of limitations

Defendants argue that the jury's tolling of the statute of limitations as to the stock transfers based on the discovery rule was clear error.  It is undisputed that the 1991 and 1994 transfers are barred by the CUFTA's four-year statute of limitations.  However, the jury concluded that the statute of limitations should be tolled based on both the discovery rule, Conn. Gen. Stat. § 52-552j(1), and concealment, Conn. Gen. Stat. § 52-595; Bound Brook Assoc'n v. City of Norwalk, 504 A.2d 1047, 1050 (Conn. 1986) (discussing tolling of the statute of limitations in context of fraudulent concealment), answering "yes" to specific interrogatories regarding these transfers:

    b.   Did the plaintiff prove:

        i.   by a preponderance of the evidence that at least one of Frank Ogalin's creditors did not discover or could not have reasonably discovered this transfer before June 30, 1999?

    . . .

        ii.  by clear and convincing evidence that the debtor or defendants actively concealed the transfer so that a creditor was prevented from discovering the transaction before June 30, 2000?

(Verdict Form [Doc. # 182] at 11-13.)

Defendants critique the evidence related to PNC Bank as the one creditor whose knowledge was offered by plaintiff to show that this creditor could not have timely discovered its claim for

fraudulent transfer.  Defendants claim that PNC Bank delayed
deposing the debtor until 2000, but could reasonably have
discovered the fraudulent stock transfers before June 30, 1999 in
the course of its mortgage foreclosure action against Frank
Ogalin, commenced in 1996.  Plaintiff's witness Attorney James R.
Byrne, counsel for PNC Bank, New England at the time of the
foreclosure of the 3425 Huntington Road property in Stratford,
Connecticut, testified that because of the state court limits on
discovery in a foreclosure action, a debtor's assets and
financial affairs are not properly part of discovery.  Plaintiff
argues that in any event, the jury could toll the statute of
limitations based on the additional ground of fraudulent
concealment, which defendants do not separately address in their
Motion for Judgment as a Matter of Law.  Since the jury had a
reasonable evidentiary basis for concluding that defendants
possessed knowledge of their fraudulent transfers, and that one
creditor did not have or could not obtain such knowledge before
Frank Ogalin's petition was filed, defendants' Motion on statute
of limitations is DENIED.

### 4.  DCC and Counts Three and Six

Defendants seek entry of judgment in favor of defendant DCC
on Counts Three and Six, which were withdrawn before trial.  The
Court deems these counts withdrawn with prejudice, and

defendants' Motion is thus DENIED as moot.

**B.    Motion for New Trial**

In their Motion for New Trial [Doc. # 197], unaccompanied by a supporting memorandum of law, defendants raise 16 points of error, some overlapping with the grounds for their Motion for Judgment as a Matter of Law.  The issues are discussed in substantive groupings as follows.

**1.    Reference to denial of Frank Ogalin's discharge in bankruptcy**

By way of background, the Court referenced the Bankruptcy Court's denial of discharge of Frank Ogalin's debts in its preliminary instructions to the jury before evidence began. However, defendants' objections to plaintiff's offer of the Bankruptcy Court judgment and memorandum of decision related to the denial of discharge was sustained, and the jury was instructed at that time that what transpired in Bankruptcy Court was irrelevant to its decision-making in this trial.  In the Second Circuit, a curative instruction may be adequate to address the potential prejudice of a statement, <u>United States v. Lewis</u>, 111 Fed. Appx. 52, 56 (2d Cir. 2004) (holding that any prejudice caused by a witness's "inadvertent reference to having previously arrested [the defendant] . . . could have easily been addressed through a proper curative instruction"), although such an instruction could be insufficient if the prejudice is severe in

degree, see United States v. Awadallah, 436 F.3d 125, 134 (2d Cir. 2006).  Here, absent exposition from defendants of how the preliminary reference to the denial of discharge, with subsequent evidentiary exclusions and corrective instruction still resulted in uncured prejudice, no new trial is warranted on this ground.

### 2.   Jury instructions

Defendants' Motion sets out the conclusory contentions that "[t]he court did not adequately or correctly instruct the jury concerning necessary elements of the alleged causes of action" (Defs. Mot. for New Trial ¶ 2) and that "[t]he verdict form allowed the jury to find liability and damages without finding legally required factual elements (id. ¶ 9).  Without any analysis as to why the instructions or verdict form were erroneous and resulted in a manifestly unjust verdict, defendants have not supported their claim for a new trial.

Defendants urge two other lines of argument related to plaintiff's claims: that neither the initial issuance of DCC stock nor the transfer of shares from Marie Ogalin to Verna Ogalin should have been considered as fraudulent conveyances (id. ¶¶ 13, 15), and that the Court erred in allowing the jury to consider defendants' pre- and post-petition salaries as fraudulent conveyances (id. ¶ 6).  These issues were briefed in defendants' Rule 50 Motion, and as explained supra, assuming the

19

legal viability of plaintiff's equitable ownership theory, there was no error in permitting the jury to consider the stock and salary transfers as fraudulent conveyances by Frank Ogalin. Defendants' Motion on this basis is DENIED.

### 3. Damages determination

Defendants also seek a new trial on the grounds that "[t]he jury was permitted to speculate, and did speculate on damages and other issues" (id. ¶ 3) and that "[t]he jury verdict is manifestly in conflict with the charge on damages" (id. ¶ 4). Again, defendants have failed to develop these points with any specificity or provide legal support.

Defendants do argue specifically that the Court erred in admitting the tax tables proffered by plaintiff, as well as the testimony of plaintiff's expert Kenison and the salary tables from the U.S. Department of Commerce (Exs. 104 and 105). (Id. ¶¶ 10, 14.) Before trial, the Court overruled defendants' objections to, but limited, Kenison's testimony (and Exhibits 104 and 105), "so long as [Kenison did] not include opinions on 'over-compensation,'" which determination was to be left to the jury. (Order [Doc. # 144] ¶ 1(b).) Since Kenison did not offer any opinion on the level of compensation received by defendants for their specific job responsibilities at DCC and confined his testimony to salary averages for job titles based on education

and age as directed, no error has been shown in permitting such testimony.  Defendants offer no explanation beyond their contention that their actual tax liability was not shown, see supra, as to how the tax-rate-table exhibits produced a seriously erroneous result.  Defendants' Motion for New Trial on these grounds is DENIED.

### 4.  Tolling of statute of limitations

With respect to the jury verdict/interrogatories on the statute of limitations, defendants contend that "[t]he court erred in its instructions and in the verdict form regarding tolling of the statute of limitations under Conn. Gen. Stat. Sec. 52-552j" (Defs. Mot. for New Trial ¶ 7) and attack the jury's consideration of tolling on the grounds of fraudulent concealment under Conn. Gen. Stat. § 52-595 (id. ¶ 16).  As this argument recapitulates defendants' Rule 50 Motion on the same ground, the Court's prior analysis is incorporated here.

### 5.  Judicial notice of Connecticut Practice Book provisions permitting discovery in civil actions

At trial, defendants requested judicial notice of certain provisions of Connecticut Practice Book Chapter 13 outlining the discovery rules for civil actions.  (See Defs. Mem. [Doc. # 168] at 2-3.)  These provisions were urged as bearing on whether PNC Bank, one of Frank Ogalin's creditors, could have earlier discovered the transfers at issue in this case through discovery

in the foreclosure action, see supra.  Plaintiff opposed

admission of these Practice Book sections (see Pl. Reply [Doc. #

170]) as prejudicial and misleading, given that "[a] debtor's

assets and financial affairs are not properly the subject matter

of discovery in a foreclosure action" (id. at 2).

Finding that the Practice Book provisions contained no

express provision related to asset discovery in a foreclosure

action, the Court declined to admit them into evidence.  In the

absence of any different or expanded theory of admissibility from

defendants, refusal of judicial notice does not justify granting

a new trial.

### 6.    Exclusion of testimonial evidence on communications between Ogalin family members

Defendants argue that the Court improperly "exclud[ed]

testimony concerning communications between Verna Ogalin and

Margaret Ogalin, and between Verna Ogalin and Frank Ogalin, as

well as other communications, thus preventing defendants from

adducing evidence negating fraudulent intent."  (Defs. Mot. for

New Trial ¶ 8.)  While defendants fail to explain the substance

of these communications, defendants' counsel had indicated at

trial that they wished to introduce testimony on the lack of a

verbal agreement among defendants and Frank Ogalin to commit

fraudulent transfers.  Defendants have at no point suggested how

such testimony offered by defendants for this purpose would

constitute a hearsay exception under the Federal Rules of Evidence, and accordingly no new trial is required.

### 7.   Unreasonableness of verdict

Finally, defendants assert that the verdict is "manifestly unreasonable and lacking in a legally sufficient evidentiary basis" (Defs. Mot. for New Trial ¶ 11) and is impermissibly "punitive" (id. ¶ 12).  The attack on the reasonableness of the verdict appears to echo defendants' earlier arguments regarding absence of evidence on defendants' actual tax liability and the legal limitations on determinations of what portion of the salaries were excessive, which the Court has already addressed. As to the punitive nature of the damages, defendants have failed to explain why the money damages awarded by totaling the excess salary payments found is necessarily punitive.[5]  A new trial will not be granted.

## IV.  Conclusion

Accordingly, defendants' Renewed Motion for Judgment as a Matter of Law [Doc. # 195] and Motion for New Trial [Doc. # 197] are DENIED.

IT IS SO ORDERED.

/s/

_____

JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 3rd day of July, 2007.**

---

[5] Defendants do not move for any remittitur of the amount of damages.